CITY OF JEFFERSON V. JENNINGS BANKING AND TRUST COMPANY.

Decided March 3, 1904.

**1.—City Charter—Construction—Negotiable Bonds—Issue.**

Charter of the city of Jefferson construed as conferring upon the city the power to issue bonds in the furtherance of the construction of railroads to or from the city and to make such bonds negotiable or payable to bearer.

**2.—City Bonds—Validity—Liquidation—Special Tax.**

It was not, in 1872, necessary to the validity of bonds, which a city was authorized to issue, to provide at the time for a special tax for their liquidation. The mayor and board of aldermen could levy such a tax but they might do so from time to time as occasion therefor arose. Nor was it essential that they should have set aside a part of the general annual revenue for that purpose, but their having done so did not vitiate the bonds.

**3.—Same—Innocent Purchaser for Value—Consideration.**

Where an innocent purchaser for value bought bonds issued by a city to secure money for the construction of a railroad, the fact that such bonds were without consideration would not be a defense to a suit by a bank, to whom such innocent purchaser had turned the bonds over for collection.

Appeal from the District Court of Marion. Tried below before Hon. J. M. Talbot.

*Geo. T. Todd,* for appellant.

*F. H. Prendergast* and *W. C. Lane,* for appellee.

JAMES, CHIEF JUSTICE.—Appellee brought this action May 21, 1896, upon three twenty-year bonds of the city of Jefferson for $500 each, payable to bearer, with certain semiannual interest coupons. The answer alleged in substance that plaintiff not being incorporated until 1895 could not have acquired the bonds until after maturity. That the bonds were illegal and void without consideration; were ultra vires; never in fact issued, and that plaintiff acquired them long after maturity, paid nothing for them, and is not a bona fide owner and holder thereof.

The details of these matters pleaded, so far as necessary to the propositions in appellant's brief, will be explained in the course of this opinion.

The court gave judgment in favor of plaintiff against the city for the amount of the three bonds and the coupons that were not barred by limitation, and interest. The case having been tried without a jury, the court must have resolved all material matters of fact in favor of the validity and sufficiency of the bonds as obligations of the city.

The first and second propositions advanced are as follows: (1) "Under section 12 of its charter powers, coupled with the provisions of its city ordinance of August 10, 1872, the city could not issue a bond payable to bearer and negotiable and transferable by delivery only, and without providing any special tax. (2) "Where the officers of a city fail to pursue the requirtments of the statutory enactment (charter) under which they are acting the corporation is not bound. In such cases the statute must be strictly followed and a person who deals with a

municipal body is obliged to see that its charter has been fully complied with."

Section 12 of the charter of 1866 gave the mayor and aldermen authority to levy a special tax for enumerated purposes, one being the construction of railroads to or from Jefferson, and it further provided that should the authorities of Jefferson deem it necessary for the accomplishments of the above objects, they are authorized and empowered to issue bonds not to exceed $50,000, or as much thereof as may be necessary, the said bonds to be in sums of not less than $100 nor more than $1000, to be payable in not less than ten nor more than twenty years from the date thereof, and to bear interest at the rate of not more than 10 per cent per annum to be paid semiannually on presentation and surrender of the coupons to be thereto attached, for which payment the said board of aldermen shall have and are hereby invested with the power to impose and assess, as other taxes are collected, a special tax not to exceed 1 per cent per annum on all the property, real and personal, in the city not exempt; provided that in levying a special tax it shall require a concurrence of three-fourths of the whole board.

In 1870 the Legislature raised the amount of possible issue of bonds to $500,000 and provided that the bonds may be used for any of the purposes named in section 12.

It is not claimed that at the date of these bonds there was any constitutional or other requirement for provision at the time for a tax to liquidate the principal and interest of this character of municipal indebtedness. The ordinance of August 10, 1872 (taking appellant's statement therefor), provided for $25,000 twenty-year 8 per cent bonds payable to bearer, and in section 5 provides that out of the revenues of the city of Jefferson the sum of $3000 annually shall be set apart and used for no other purpose than as sinking fund and for the payment of interest on the bonds aforesaid.

We conclude: 1. That under its charter the city clearly had power to issue bonds in the furtherance of the construction of railroads to or from the city and to make such bonds negotiable or payable to bearer as such bonds are usually drawn.

2. It was not necessary to the validity of such bonds for the board to provide for a special tax in reference to their liquidation; the power was given to them so to do, but the necessity of so doing at the time was not enjoined. They had the power to do this from time to time as the necessity or expediency therefor arose. It was not essential that they should have set aside and appropriated a part of the general annual revenue for that purpose, but their having done this did not vitiate the bonds. The revenues of the city at that period may have justified the expectation that it would never be necessary to resort to a special tax; and there is nothing in the ordinance which would evidence, as a part of the contract, that it was the intention that no special tax should ever be levied in connection with the bonds. If the provision for payment

out of the general funds proved ineffective or abortive, the city still had power under its charter to levy a special tax at any time or times for that purpose. We are not able to hold that the provision sought to be made in the ordinance vitiated the bonds. We conclude further, in reply to a suggestion in appellant's brief, that the power to issue bonds for such purpose was conferred by the charter in the most general terms and they could be lawfully issued for such purpose directly to a vendor of land to be used for a railway depot, as well as by a sale of their bonds and the use of the proceeds to purchase land for that purpose.

Under the second assignment we have this proposition: "Where it is shown that the bonds recited in the deed were not in fact delivered, and the land sought to be acquired and donated to aid in the construction of the Texas & Pacific Railroad was not in fact so acquired, donated and used for depot or any other purpose in aid of the construction of the road, then there was and is a failure of consideration inuring to the city and the road, and such bonds have no valid consideration to support them."

It was proved that J. H. Roberts bought the bonds in 1874 and paid for them $1500 and had turned them over to plaintiff bank for collection and for suit, and that he knew nothing about the bonds except what appears upon their face. In other words there was evidence that he became an innocent purchaser for value of the bonds in 1874; that he was the equitable owner of them; and that the bank had become the holder of same for collection or suit for his benefit. The above being so, and doubtless so considered by the trial judge, a defect in the consideration would not avail defendant. But there was evidence of consideration. It is true the owner of the land, a Mrs. Brooks, testified she never received or saw a single one of the bonds and that she still claimed the land. It appeared, however, that she had given her son a power of attorney, and that she executed a bond for title dated August 12, 1872, agreeing to convey the eighteen acres to the city for twenty-year bonds; also that a deed from her by her said attorney in fact for said eighteen acres was executed to the city on September 25, 1872, reciting "in consideration of $18,000 to me in hand paid by the corporation of the city of Jefferson on the bonds of said city of Jefferson payable to bearer twenty years after date thereof with interest at the rate of 8 per cent per annum from date, payable semiannually upon the first days of January and July of each year at the Citizen's Savings Bank of said city of Jefferson, by coupons attached upon the surrender of the corresponding coupon; said bonds bearing date September 2, 1872." Also that on October 2, 1872, the city executed a bond to convey said eighteen acres to the Texas & Pacific Railway. It appeared also that the location of the depot was changed and that the Texas & Pacific Railway reconveyed the eighteen acres to the city, and that the city afterwards in 1876 conveyed it to the East Line & Red River Railroad Company by quitclaim deed.

The bonds mentioned in the deed to the city correspond in description to those sued on; that the three bonds found their way into the hands of an innocent purchaser for value, for whom plaintiff holds them, was made to appear, and the testimony sufficiently indicates a consideration for the bonds and that they were presumably issued and delivered to said attorney in fact at the time of the execution of the deed, and any or either of such findings would not be disturbed as unsustained by the testimony.    What may have been done afterwards, or whether Mrs. Brooks ever received or saw the bonds, would be immaterial as to an innocent purchaser for value.

What has been said in effect disposes of the remaining assignments. There is no doubt that if Roberts was a bona fide purchaser for value, any subsequent transferee or holder of them under him or for him would be protected as he was.    This is the only point made by the fourth assignment and the proposition thereunder.    There is no assignment which questions the right of the bank to prosecute this suit to judgment for the reason that Roberts, the real owner of these bonds, was not a party to the suit in persona.

*Affirmed.*

Writ of error refused.